1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10                  **SOUTHERN DIVISION**
11

| | |
|---|---|
| | ) **Case No.: SACV 15-01514-CJC(DFMx)** |
| **FRANK J. ARLASKY,** | ) |
| | ) |
| **Plaintiff,** | ) **ORDER DIRECTING PLAINTIFF TO** |
| **v.** | ) **SHOW CAUSE REGARDING** |
| | ) **CONTEMPT, WHY THIS CASE** |
| **NATIONSTAR MORTGAGE, LLC,** | ) **SHOULD NOT BE DISMISSED, AND** |
| **and VERIPRISE PROCESSING** | ) **WHY A JUDGMENT SHOULD NOT** |
| **SOLUTIONS, LLC,** | ) **BE ENTERED** |
| | ) |
| **Defendants.** | ) |
| | ) |

# I.  INTRODUCTION AND BACKGROUND

Plaintiff Frank J. Arlasky filed this case on August 4, 2015, alleging violations of the California Homeowner Bill of Rights by Defendants beginning foreclosure proceedings on his home.  (Dkt. 1-1.)  The underlying $993,675 loan was made in May 2006; Plaintiff initially defaulted in 2008; and Plaintiff obtained two loan modifications in 2009 and 2010.  (Dkt. 26 at 1–2.)  Plaintiff defaulted on both modifications; Plaintiff then filed for bankruptcy in August 2011 and has not made any payments since then. (*Id.*)  In 2012, Plaintiff applied for another modification from the then-servicer of his loan, was denied, sued, and the lawsuit was dismissed without prejudice (the servicer agreed to a loan modification review).  (*Id.* at 2.)  Nationstar Mortgage LLC ("Nationstar") began servicing the loan effective April 1, 2014.[1]  (*Id.* at 2.)

According to Nationstar, while Plaintiff claims that he submitted a loan modification application in September 2014, he has produced no evidence that he did so and Nationstar did not receive any application.  (*Id.* at 2.)  A notice of default and intent to foreclose was recorded on February 11, 2015.  (*Id.* at 2.)  On March 25, 2015, Nationstar received an incomplete loan modification application package from Plaintiff and sent Plaintiff a letter informing him of the deficiencies two days later, on March 27, 2015.  (*Id.* at 2.)  On April 1, 2015, Plaintiff's counsel, Mr. Wilson, submitted some of the missing information by email and stated that the rest of the missing documents would be sent that week.  (*Id.* at 2.)  Nationstar sent a letter to Plaintiff on April 11, 2015, requesting additional missing information.  (*Id.* at 2.)  On April 27, 2015, Mr. Wilson emailed Nationstar and acknowledged that it did not have a complete Request for Mortgage Assistance but did not include it in the email or sent it subsequently.  (*Id.* at 3.)

---

[1] In the notice of removal, Defendant Veriprise Processing Solutions, LLC, declared its nonmonetary status and that it had been named solely in its capacity as trustee.  (Dkt. 1-6.)  Accordingly, for clarity, Defendants will be referred to as "Nationstar" throughout this Order.

The following day, Nationstar spoke to Plaintiff, who promised that he would submit the outstanding information, including the Request for Mortgage Assistance.  (*Id.* at 3.)

In contrast, Plaintiff's First Amended Complaint perfunctorily alleges that Nationstar has been unresponsive, has lost documents and required redundant submissions, has been inconsistent about the method for submitting documents, and has repeatedly failed to review completed modification applications and paperwork.  (Dkt. 1-1.)

A notice of trustee's sale was recorded on May 19, 2015 and noticed for June 11, 2015.  (Dkt. 26 at 3; Dkt. 27 Ex. 8.)  At that time, Plaintiff had not filed the Request for Mortgage Assistance.  (Dkt. 26 at 3.)  Plaintiff filed for bankruptcy on June 9, 2015, (Dkt. 27 Ex. 5), but his case was dismissed on June 19, 2015, for failure to file documents, (*id.* Ex. 6).[2]  A second notice of trustee's sale was recorded on August 25, 2015, and noticed for September 25, 2015.  (Dkt. 26 at 3; Dkt. 27 Ex. 9.)  Plaintiff received an additional notice of trustee's sale in December 2015, which was noticed for February 2, 2016.  (Dkt. 9 at 4.)

Plaintiff claims that he submitted a modification application in December 2015.  (Dkt. 14 at 2.)  By January 14, 2016, Nationstar had agreed to postpone the foreclosure sale and review Plaintiff for a loan modification.  (Dkt. 9 at 3.)  Nationstar denied Plaintiff's application for a loan on February 27, 2016, because Plaintiff had negative disposable income and his single unit home did not qualify for assistance under the Home Affordable Modification Program.  (Dkt. 14 Ex. A.)

---

[2] Defendant's request for Judicial Notice of Plaintiff's bankruptcy filing and its dismissal is GRANTED. (Dkt. 27.)  This proceeding is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201.

Plaintiff appealed on May 16, 2016, (the denial specified thirty days for appeal, (*id.*)), arguing that because his home has four bedrooms it qualified as a four unit dwelling for the Home Affordable Modification Program and that his "income has increased considerably since the last review" due to royalties received from a business investment.  (*Id.* Ex. B.)  The appeal was denied on June 29, 2016.  (*Id.* Ex. A.)  Plaintiff claims that the appeal's denial letter "contains numbers and calculations so flawed that Nationstar underestimated the monthly income by $10,000.00."  (Dkt. 14 at 7.)  The disagreement arises from Plaintiff's submitted profit and loss statement, which showed net income of $11,814.16.  (*Id.* at 4.)  Because the statement clearly indicates it is for January through October 2015, Nationstar divided $11,814.16 by ten to derive a monthly income.  (*Id.* Ex. A; Dkt. 16 Ex. 1.)  Plaintiff seems to believe such division was inappropriate and that "Plaintiff showed income of, $11,920.81, *each* month in his tax returns, Profit & Loss Statement, and request for mortgage assistance."  (Dkt. 14 at 4 (emphasis added).)  The appeal denial letter stated that if Plaintiff had experienced a change in circumstance, he could submit a complete reapplication package within fifteen calendar days.  (*Id.* Ex. A.)

Nationstar's counsel, Mr. Lueck, sent Mr. Wilson the appeal denial letter; in the cover letter, he stated "[d]ue to the ongoing litigation of the loan, please continue to direct all correspondence to my office."  (*Id.* Ex. A.)  On July 15, 2016, Mr. Wilson sent Mr. Lueck an email purporting to contain all the modification documents,  though only two files (named "Arlasky, Frank July 2016 Mod Part 1.pdf" and "Arlasky, Frank July 2016 Mod Part 4.pdf") were attached, along with Plaintiff's tax returns.  (Dkt. 16 Ex. 2.)  Mr. Lueck contacted Mr. Wilson on July 18, 2016, informing him of the need to resend a complete set of the materials.  (*Id.*)

On July 20, 2016, presumably after receiving various files, Mr. Lueck emailed Mr. Wilson stating: "We are in receipt of your emails, including numerous .pdf files, which

you claim are associated with a new loan modification Mr. Arlasky is trying to submit. We will not be forwarding these documents to our client at this time.  As I've mentioned in other emails to you, we are not interested in facilitating continuing modification reviews while the litigation just sits pending unless we are required to review your client by statute. . . . [The appeal denial letter] invited your client to inform us if he has a material change in financial circumstances.  And if so we would re-review. . . . However, as you know, . . . [i]t is not our obligation, or our client's obligation, to search all the documents sent to us (which include 2013 tax returns and other non-relevant items) to determine whether there is a material change to your client' [sic] *current* financial circumstances requiring re-review."  (Dkt. 14 Ex. C (emphasis in original).)

On July 14, 2016, Nationstar served a notice of deposition of Plaintiff and demand for production of documents scheduled for August 3, 2016, at 9:30 a.m.  (Dkt. 18 at 1.)  On Monday, July 25, 2016, Mr. Wilson asked if a continuance of the deposition would be possible.  (*Id.* Ex. B.)  Less than an hour later, Mr. Lueck replied indicating amenability to a continuance; he followed up on Wednesday with four possible dates the following week (August 9–12).  (*Id.* Ex. B.)  Two days after that, on Friday, after not hearing from Mr. Wilson, he followed up again warning that his schedule was filling quickly.  (*Id.* Ex. B.)  On Sunday, he wrote to Mr. Wilson asking to "[p]lease confirm [that] one of the below dates work for your client's deposition by tomorrow . . . . Otherwise, I will be flying to Los Angeles Tuesday and will plan to depose him on Wednesday in our office as noticed."  (*Id.* Ex. B.)  The following day, August 1, 2016, he emailed Mr. Wilson stating that "We are going forward with the deposition on 8/3. . . . We cannot notice the deposition for a later date."  (*Id.* Ex. B.)  That day, Plaintiff filed a motion seeking leave to file an amended complaint that failed to attach a proposed amended complaint.  (Dkt. 14.)  Due to that procedural defect, the Court denied the motion.  (Dkt. 23.)  Mr. Lueck took the opportunity presented by that defective filing to email Mr. Wilson the day before the August 3, 2016, deposition and again remind him of the deposition.  (Dkt. 18 Ex. B.)

On August 3, 2016, at 9:33 a.m. Mr. Wilson emailed Mr. Lueck stating "[u]nfortunately, we cannot attend the depo today.  Please let me know when we can reschedule."  (*Id.* Ex. C.)  Mr. Lueck replied that afternoon, requesting telephonic meet and confer the following day.  (*Id.* Ex. C.)  The following morning, he emailed Mr. Wilson again asking when he was available that day for a meet and confer.  (*Id.* Ex. C.)  Mr. Wilson replied at midnight offering the following day at 1:00 p.m. and indicating flexibility.  (*Id.* Ex. C.)  The next morning, at 7:00 a.m., Mr. Lueck emailed Mr. Wilson offering two potential windows of time.  (*Id.* Ex. C.)  After the first window elapsed without a reply, Mr. Lueck emailed again asking which time in the second window would work.  (*Id.* Ex. C.)  He followed up a few hours later informing Mr. Wilson that his voicemail was full and asking for a time in the second window that would work.  (*Id.* Ex. C.)

Mr. Wilson did not reply and did not answer multiple calls from Mr. Lueck on August 5, 2016.  (*Id.* Ex. C.)  On Sunday, August 7, 2016, Mr. Lueck emailed Mr. Wilson asking which times worked for meet and confer the following day or the day after.  (*Id.* Ex. C.)  Monday evening, he emailed Mr. Wilson again, after he did not hear from him, indicating availability the following day.  (*Id.* Ex. C.)  Tuesday evening, after Mr. Wilson was still incommunicado, Mr. Lueck emailed warning of a motion to compel and his intent to seek the fees incurred.  (*Id.* Ex. C.)

On the afternoon of August 10, 2016, Mr. Wilson emailed Mr. Lueck "What day did you have in mind for the depo?"  (*Id.* Ex. C.)  An hour later, Mr. Lueck replied asking for a time for a meet and confer in advance of a motion to compel should Plaintiff again fail to appear at his deposition.  Around noon on August 12, 2016, Mr. Wilson emailed Mr. Lueck stating that he had time that afternoon or Tuesday, August 16, 2016, to meet and confer; if those times did not work, he indicated that he was flexible between August 16 and August 19.  (*Id.* Ex. F.)  Mr. Lueck emailed back two minutes later asking if 2:30

p.m. worked.  (*Id.* Ex. F.)  Mr. Wilson confirmed that it worked.  (*Id.* Ex. F.)  During the Friday, August 12, 2016, call, Mr. Wilson agreed to produce Plaintiff for deposition on Friday, August 19, 2016, and agreed to produce responsive documents by Monday, August 15, 2016.  (*Id.* at 4.)  Confusingly, that same day, Plaintiff served an objection to the purportedly improperly noticed deposition and requests for production on Nationstar.  (*Id.* Ex. G.)

On August 15, 2016, Nationstar served its amended notice of deposition and request for documents.  (*Id.* Ex. H.)  Having not received the documents by noon on Wednesday, August 17, 2016, Mr. Lueck emailed Mr. Wilson asking for the production and for Mr. Wilson to confirm receipt of the deposition notice.  (*Id.* Ex. I.)  Mr. Lueck followed up the next day at 3:38 p.m. asking Mr. Wilson to bring the documents to the deposition and reminding him of the deposition scheduled for the following day.  (*Id.* Ex. I.)  Less than an hour later, Mr. Wilson replied that he would send the responses in an email and would bring them to the deposition.  (*Id.* Ex. I.)  Mr. Lueck immediately replied to confirm that Mr. Wilson knew that the deposition was set for 10:00 a.m. the following day.  (*Id.* Ex. I.)

At 8:29 in the morning on Friday, August 19, 2016, Mr. Wilson emailed Mr. Lueck saying "I am sorry, but I cannot make the deposition this morning.  Something came up that requires me to stay in San Diego.  I will call  you on Monday.  Given the one-year timeline for foreclosure, and its expiration August 21, 2016, there are a few things I would like to discuss."  (*Id.* Ex. I.)

On August 23, 2016, Nationstar moved to compel Plaintiff's deposition and sought an order for sanctions of $10,875.84 for its fees and costs incurred in preparing for attending both noticed depositions and the motion to compel.  (Dkt. 18.)  The motion was noticed for hearing on September 20, 2016; Magistrate Judge McCormick *sua sponte*

advanced the hearing to August 31, 2016. (*Id.*; Dkt. 22.) Plaintiff was ordered to file any opposition by August 30, 2016. (Dkt. 22.) No opposition was filed and Mr. Wilson did not appear for the hearing. (Dkt. 25.) Judge McCormick orally granted Nationstar's motion, ordered Plaintiff to appear for deposition on September 13, 2016, and imposed sanctions on Plaintiff and Mr. Wilson. (*Id.*) Nationstar took Plaintiff's deposition as ordered. (Dkt. 29 at 1.)

On October 5, 2016, Nationstar moved for an order to show cause why Plaintiff should not be held in civil contempt or, in the alternative, asked Judge McCormick for terminating sanction, to enter judgment in its favor for $12,809.84 (the original $10,875.84 plus the cost of bring the motion) and dismiss the case with prejudice. (Dkt. 29.) The hearing was set for October 25, 2016, and Plaintiff was ordered to file any opposition by October 18, 2016. (Dkt. 32.)

A week earlier, on September 30, 2016, Nationstar had moved for summary judgment before this Court, arguing, *inter alia*, that Plaintiff's claims were moot since the notices of trustee's sales expired by operation of law. (Dkt. 26 at 7 (citing Cal. Civ. Code § 2924g(c)(1) (setting one year validity for notices of trustee's sales)).) This Court held that motion in abeyance pending the outcome of the contempt proceeding before Judge McCormick. (Dkt. 31.)

On October 21, 2016, having received no opposition from Plaintiff to Nationstar's motion seeking an order to show cause, Judge McCormick took the hearing off the calendar and granted the motion. Plaintiff and Mr. Wilson were ordered to appear on November 8, 2016, to show cause why they should not be held in civil contempt or, in the alternative, why the case should not be dismissed and a judgment entered against them. (Dkt. 35.) Plaintiff and Mr. Wilson were ordered to file any papers in opposition by November 1, 2016. (*Id.*)

Neither Plaintiff nor Mr. Wilson filed papers in opposition.  At the November 8, 2016, hearing, Mr. Wilson appeared on Plaintiff's behalf and "represented that neither he nor his client was financially able to pay the sanction as ordered."  (Dkt. 42 at 3.)  Mr. Wilson "also argued that the amount of the sanction should be reduced because the fees and costs incurred were unreasonable."  (*Id.*)  Since the time to seek reconsideration of the sanctions order expired on September 14, 2016, Local Rule 72-2.1, Judge McCormick found that Nationstar had established a prima facie case of contempt.  (*Id.* at 5.)  Pursuant to 28 U.S.C. § 636(e)(6), Judge McCormick certified the facts and certified an order requiring Plaintiff and Mr. Wilson to appear before this Court on December 16, 2016. (*Id.* at 4, 6.)  Judge McCormick also submitted a Report and Recommendation to this Court, recommending that we deny Nationstar's request for terminating sanctions with prejudice and enter a judgment in its favor for $12,889.84.  (Dkt. 41.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## II.  ANALYSIS

The Court questions whether Plaintiff is committed to prosecuting this case. Plaintiff's actions dragging out and impairing Nationstar's offer of loan modification review, refusing to communicate consistently or comprehensively with Nationstar, repeatedly committing to and then abdicating discovery obligations, failing to oppose or appear at numerous proceedings before Judge McCormick, and filing incomplete motions before this Court cause concern that the judicial system is being coopted for dilatory ends.  That is exacerbated by Plaintiff's passive acquiescence to the continuation of this case even though foreclosure is time barred.

Accordingly, the Court ORDERS Plaintiff and Mr. Wilson TO SHOW CAUSE why this case should not be dismissed for failure to prosecute and because his claims are moot.  The Court also ORDERS Plaintiff and Mr. Wilson TO SHOW CAUSE why they should not be held in civil contempt for their failure to comply with the sanctions order. Finally, the Court ORDERS Plaintiff and Mr. Wilson TO SHOW CAUSE why judgment in the amount of $12, 889.84 should not be entered against them for the attorneys' fees incurred by Nationstar to compel discovery and have them held in civil contempt.

Plaintiff and Mr. Wilson are hereby ORDERED to submit written opposition to these orders to show cause by **December 14, 2016**.  Nationstar may file a response to the Court's orders to show cause by the same date.  The Court hereby SCHEDULES a hearing on these orders to show cause for **December 16, 2016**, at 11:00 a.m. in Courtroom 9B.

The Court reminds Plaintiff and Mr. Wilson that it is their burden to demonstrate at the hearing their individual inabilities to comply with the sanctions order.  *See Turner v. Rogers*, 564 U.S. 431, 442 (2011) ("A court may not impose punishment 'in a civil

contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order.'") (quoting *Hicks v. Feiock*, 485 U.S. 624, 638 n.9 (1988)); *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply.") (quotation omitted); *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) (sanctioned party "knows best" his situation and has the burden "to produce probative evidence of his inability to pay the sanctions"); *NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973) (person failing to comply with court order must demonstrate inability to comply "categorically and in detail" in order to avoid contempt finding (citation omitted)).

DATED:      December 7, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE